IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00201-RM-KLM

HILLARY VALLES,

    Plaintiff,

v.

GEN-X ECHO B, INC, d/b/a GENX and
MARTIN COLLAZO RANGEL,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Gen-X Echo B, Inc.'s ("GenX") **Partial Motion to Dismiss Pursuant to Rule 12(b)(6)** [Docket No. 12; Filed April 29, 2013] (the "Motion"). On May 14, 2013, Plaintiff filed a Response [#16]. On May 31, 2013, Defendant GenX filed a Reply [#20]. Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C the Motion has been referred to this Court for a recommendation regarding disposition [#17]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#12] be **GRANTED**.

### I. Background

Plaintiff filed this civil action on January 28, 2013, asserting claims against Defendant GenX and Defendant Martin Rangel ("Rangel"). *See generally* Complaint [#1]. Specifically, Plaintiff brought four claims against Defendant GenX: violation of Title

VII, retaliation pursuant to Title VII, violation of the Colorado Wage Act, and negligent hiring/negligent retention.[1] *See id.* at 5-7. Plaintiff brought an assault claim against Defendant Rangel. *See id.* at 7-8. On April 13, 2013, Plaintiff filed her First Amended Complaint With Demand for Jury Trial pursuant to Fed. R. Civ. P. 15(a)(1). *See generally Am. Compl.* [#10]. In her Amended Complaint Plaintiff continued to assert the same claims, but "correct[ed] the name of Defendant [GenX]." *Id.* at 1. On July 2, 2013, the Court granted Plaintiff's Unopposed Motion to File Second Amended Complaint and Join Additional Parties [#24] and the Court accepted for filing her Second Amended Complaint [#27]. Plaintiff's Second Amended Complaint With Demand for Jury Trial added claims against two additional Defendants and maintained her previously asserted claims against Defendant GenX and Defendant Rangel. *See Second Am. Compl.* [#27] at 5-10. On July 9, 2013, the Court denied the instant Motion as moot because of the filing of the Second Amended Complaint. *See Minute Order* [#29] at 1. On July 24, 2013, the Court granted Defendant GenX's Unopposed Motion to Consider Forthwith GENX's Partial Motion to Dismiss as to Plaintiff's Second Amended Complaint [#39] and reinstated the Motion. *See Minute Order* [#39] at 1. In its Minute Order, the Court noted that it would treat the Motion "as responding to the Fourth Cause of Action included in the now operative Second Amended Complaint [#27]" because the Fourth Cause of Action did not change as a result of the amendment. *Id.* On August 14, 2013, Plaintiff filed her Motion for Leave to File Her Third Amended Complaint by Adding New Party Defendant GenX Clothing, Inc. [#41]

---

[1] As Plaintiff states, "Count Four of the [C]omplaint contained common law tort claims against Defendant [GenX] which were pled in the alternative: for negligent hiring or for negligent retention." *Response* [#16] at 1.

2

(the "Motion to Amend"). On September 27, 2013, the Court recommended that the Motion to Amend be denied. *Recommendation* [#48] at 12.

Plaintiff's claims in this case relate to an alleged rape that occurred on July 29, 2011, at a store owned by Defendant GenX. *See Second Am. Compl.* [#27] at ¶¶ 13-15. Plaintiff asserts that she was an employee at the store and that Defendant Rangel was a store manager at the time of the alleged rape. *Id.* at ¶¶ 13, 25. In her Second Amended Complaint, Plaintiff alleges that after reporting the alleged rape, she was not allowed to return to work. *Id.* at ¶ 17. Plaintiff further alleges that "she was not fully compensated for the time that she worked for [Defendant GenX] prior to the assault." *Id.* at ¶ 19. Regarding Defendant GenX, Plaintiff avers that it "did not conduct a proper background check of Defendant Rangel at the time of his hire and failed to discover his criminal record" and that "[g]iven the position of authority of Defendant Rangel it was unreasonable for Defendant [GenX] to fail to conduct a criminal background check prior to Rangel's hiring." *Id.* at ¶ 22. Plaintiff also states that "[g]iven the nature of the criminal charges against Defendant Range[l], including charges of domestic violence, it was reasonably foreseeable that he might use violence against the female employees of the store." *Id.* at ¶ 24.

In the pending Motion, Defendant GenX seeks dismissal of Plaintiff's fourth claim against it for negligent hiring/negligent retention. *See generally Motion* [#12]. Defendant GenX argues that Plaintiff's negligent hiring claim fails as a matter of law because Plaintiff's "allegations are insufficient to show [Defendant GenX] had a duty to perform a criminal background check on [Defendant] Rangel." *Id.* at 3. Defendant GenX further argues that Plaintiff cannot establish proximate cause: "[t]he fact that

3

[Defendant] Rangel was previously *charged* with crimes – none of which were rape – did not make it foreseeable that he would sexually assault Plaintiff." *Id.* at 4 (emphasis in original). Defendant GenX avers that "even if [it] had discovered the charges against [Defendant] Rangel, it had no right or reason to assume they were valid, or use them as a basis to deny him employment. In fact, doing so could have subjected [Defendant] GenX] to civil liability." *Id.* at 5. As a result, Defendant GenX argues that Plaintiff cannot establish causation. *Id.* at 6-7. Defendant GenX also maintains that Plaintiff's negligent retention claim fails as a matter of law because Plaintiff cannot establish either breach or causation. *Id.* at 7-9.

In her Response, Plaintiff argues that "[b]ased on the facts alleged by [Plaintiff], Defendant [GenX] had a duty of reasonable care toward her because of the close contact between her and her manager and its failure to do a pre-employment investigation results in liability for its negligence." *Response* [#16] at 3. Plaintiff contends that "given the position of authority of Defendant Rangel over the other employees, it was unreasonable for Defendant [GenX] to fail to conduct a criminal background check prior to Rangel's hiring." *Id.* at 4. Plaintiff further argues that she "alleged that Defendant [GenX's] failure to conduct a proper background check was the direct and proximate cause of [the] injuries she suffered as a result of the assault on her by Rangel." *Id.* Plaintiff also contends that "[t]he question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards – whether reasonable persons would recognize a duty and agree that it exists." *Id.* at 5. Regarding the fact that Defendant Rangel was charged but never convicted of crimes, Plaintiff states that the distinction is "irrelevant to whether there was

4

a valid basis to believe that Rangel may have been dangerous to women and whether a reasonable person would refuse to hire an individual with such criminal charges against him." *Id.* at 5-6.

The Court also notes that at the end of her Response, Plaintiff asks that if the Court "finds that [P]laintiff has failed to plead sufficient facts to make out a prima facie case, she respectfully requests leave from the [C]ourt to amend her [C]omplaint to add said facts." *Id.* at 6. Pursuant to D.C.COLO.LCivR 7.1C, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper." Therefore, the Court will not consider this one-sentence request in Plaintiff's Response.

In its Reply, Defendant GenX argues that Plaintiff's failure to address its argument regarding her negligent retention claim dictates that the claim be dismissed. *Reply* [#20] at 1, 7. Defendant also argues that while "an employer must do more than review a potential employee's personal data on an application if the employee will have close contact with the public, [that] rule is irrelevant to Plaintiff's claim." *Id.* at 3. According to Defendant, "[o]ther than alleging [that Defendant GenX] failed to conduct a criminal background check of Defendant Rangel, Plaintiff's Complaint is silent as to what [Defendant GenX] did and did not do prior to hiring him." *Id.* at 4. Defendant maintains that certain allegations included in Plaintiff's Response [#16], but not in her Second Amended Complaint [#27], cannot be considered by the Court when determining if Plaintiff's Second Amended Complaint is sufficient on its face. *Reply* [#20] at 4 n.3 & 4. Defendant further asserts that the alleged domestic violence charge brought against Defendant Rangel, did not make it foreseeable that he would rape

5

Plaintiff. *Id.* at 5-7. Finally, Defendant asks the Court to dismiss Plaintiff's negligent hiring/negligent retention claim with prejudice. *Id.* at 7-8. In support of this request, Defendant attaches an email exchanged by counsel as part of the meet and confer process engaged in prior to the filing of the instant Motion. *See generally Herzog Email* [#20-1]. Defendant argues that "it would be inequitable and unjust to reward Plaintiff for disregarding [Defendant GenX's] meet-and-confer efforts with another bite at the apple. . . . [and] it would be futile to allow Plaintiff to amend her Complaint . . ." *Reply* [#20] at 8.

## II. Standard of Review

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a]

pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

**A.     Negligent Hiring**

To state a claim for negligent hiring, Plaintiff must allege "the usual elements of negligence—duty, breach, injury, causation—and the establishment of an agency relationship between the employer and alleged employee." *Nielsen v. Archdiocese of Denver*, 413 F.Supp.2d 1181, 1184 (D. Colo. 2006) (citation omitted). "An employer

7

may be liable for harm to others for negligently employing an improper person for a task which may involve a risk to others." *Moses v. Diocese of Colo.*, 863 P.2d 310, 323-24 (Colo. 1993), *cert. denied*, 511 U.S. 1137 (1994). "It is axiomatic that a prerequisite to establishing negligent hiring is an employment or agency relationship. The existence of an agency relationship is ordinarily a question of fact to be determined by the fact finder." *Id.* at 324 (citations omitted). "A court can only decide whether an agency relationship exists as a matter of law when the facts are not in dispute." *Id.* (citation omitted). Here, Plaintiff alleges that Defendant Rangel was employed by Defendant GenX at the time the alleged rape occurred. *See Second Am. Compl.* [#27] at ¶¶ 7, 13-15. Defendant GenX admits that Defendant Rangel was an employee. *See Answer* [#32] at ¶¶ 7. However, Defendant GenX denies the remainder of the allegations regarding the time period of the alleged rape. *Id.* at ¶¶ 7, 13-15. Nonetheless, because the instant Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court need not determine if there was an agency relationship between Plaintiff and Defendant GenX. For consideration of the instant Motion, it is enough that Plaintiff has pled facts to support such a finding. Here, Plaintiff has included sufficient allegations regarding an agency relationship.

With regard to negligent hiring, Defendant GenX argues that Plaintiff has not sufficiently alleged that Defendant GenX had a duty to perform a criminal background check, a breach of that duty, or causation. *Motion* [#12] at 3-7. Plaintiff contends that she sufficiently pled this cause of action because she alleged "that [Defendant] Rangel had a criminal record prior to his hire" and that "[g]iven the nature of the criminal charges against Defendant Rangel . . . it was reasonably foreseeable that he might use

8

violence against the female employees of the store." *Response* [#16] at 4. In addition, Plaintiff asserts that "given the position of authority of Defendant Rangel over the other employees, it was unreasonable for Defendant [GenX] to fail to conduct a criminal background check prior to Rangel's hiring." *Id.*

In her Second Amended Complaint, Plaintiff offers the following allegations regarding the circumstances at the time Defendant GenX hired Defendant Rangel:

- At the time he was hired, Defendant Rangel "had a criminal record that included the following charges: domestic violence in the presence of a child, assault, theft, unlawful detention and assault in the form of domestic violence," *Second Am. Compl* [#27] at ¶ 21;

- "Defendant [GenX] did not conduct a proper background check of Defendant Rangel at the time of his hire and failed to discover his criminal record. . . . Given the position of authority for Defendant Rangel it was unreasonable for Defendant [GenX] to fail to conduct a criminal background check prior to" hiring Defendant Rangel, *id.* at ¶ 22;

- "Given the nature of the criminal charges against Defendant Range[l], including charges of domestic violence, it was reasonably foreseeable that he might use violence against the female employees of the store," *id.* at ¶ 24; and

- "[G]iven Defendant Rangel's position as a store manager with the concomitant authority with regard to the management of store employees, including young women, and specifically the [P]laintiff, Defendant [GenX] had a duty to take reasonable steps to protect the female store employees by refusing to hire Rangel or, alternatively, by terminating his employment." *Id.* at ¶ 25.

"An employer will be found liable for negligent hiring and retention if, at the time of hiring, the employer had reason to believe that hiring the employee in question would create an undue risk of harm to others." *Johnson v. USA Truck, Inc.*, No. 06-cv-00227-EWN-MEH, 2007 WL 2461645, at *3 (D. Colo. Aug. 27, 2007) (citing *Van Osdol v. Vogt*, 908 P.2d 1122, 1133 (Colo. 1996) ("Van Osdol II")). When considering a negligent hiring claim, "the court does not inquire into the employer's broad reasons for choosing this particular employee for the position, but instead looks to whether the specific

9

danger which ultimately manifested itself could have reasonably been foreseen at the time of hiring." *Van Osdol II*, 908 P.2d at 1132 n.17.  "Unlike *respondeat superior* actions, negligent hiring actions do not predicate employer liability on the employee acting as an agent of the employer." *Prymak v. Contemporary Fin. Solutions, Inc.*, No. 07-cv-00103-EWN-KLM, 2007 WL 4250020, at *17 (D. Colo. Nov. 29, 2007) (citing *Raleigh,* 130 P.3d at 1016).  "Liability results . . . not because of the relation of the parties, but because the *employer antecedently had reason to believe that an undue risk of harm would exist because of the employment.*"  *Raleigh*, 130 P.3d at 1017 (quotation omitted) (emphasis in original).  "The key word in this formulation, 'antecedently,' refers to the time of hiring." *Id.* "Thus, the primary inquiry is whether *at the time of hiring* the employer had reason to foresee the complained of harm." *Prymak*, 2007 WL 4250020, at *17 (citing *Hutchinson by Hutchinson v. Luddy*, 742 A.2d 1052, 1058 (Pa. 1999)).  The harm complained of here is Defendant Rangel's alleged rape of Plaintiff.

The cases cited above require consideration of whether Defendant GenX had a duty to conduct a criminal background check when it hired Defendant Rangel.  "A duty of reasonable care arises when there is a foreseeable risk of injury to others from a defendant's failure to take protective action to prevent the injury." *Connes v. Molalla Transport Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992) (citation omitted).  However, "[w]hile foreseeability is a prime factor in the duty calculus, a court also must weigh other factors, including the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm caused to the plaintiff, the practical consequences of placing such a burden on the defendant, and any additional elements disclosed by

10

the particular circumstances of the case." *Id.* (citations omitted). "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo. 1987).

When adopting negligent hiring as a tort, the Colorado Supreme Court took into account the various considerations discussed above and made clear that an employer's duty of care does not include searching for and reviewing criminal records, except in special circumstances:

> We endorse the proposition that where an employer hires a person for a job requiring frequent contact with members of the public, or involving close contact with particular persons as a result of a special relationship between such persons and the employer, the employer's duty of reasonable care is not satisfied by a mere review of personal data disclosed by the applicant on a job application form or during a personal interview.  However, in the absence of circumstances antecedently giving the employer reason to believe that the job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public with whom the applicant will be in frequent contact or to particular persons standing in a special relationship to the employer and with whom the applicant will have close contact, we decline to impose upon the employer the duty to obtain and review official records of an applicant's criminal history.  To impose such a requirement would mean that an employer would be obligated to seek out and evaluate official police and perhaps court records from every jurisdiction in which a job applicant had any significant contact.  We have serious doubts whether such a task could be effectively achieved.  Even if it could, there would remain the significant problem of interpreting the records and relating them in a practical way to the job in question.  Accordingly, in the absence of circumstances antecedently giving the employer reason to believe that a job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public with whom the applicant will be in frequent contact or to particular persons who stand in a special relationship to the employer and with whom the applicant will be in close contact, the employer's duty of reasonable care does not extend to searching for and reviewing official records of a job applicant's criminal history.

11

*Connes*, 831 P.2d at 1322-23.

In her Response, Plaintiff argues that Defendant GenX "knew that its managers had an unusually close and special relationship with the store employees and that they had access to remote portions of the premises." *Response* [#16] at 5. However, she does not include any such allegation in her Second Amended Complaint. Further, Plaintiff offers no support for her belief that an employee in a store has a special relationship with her manager which would require the store to inquire into the manager's criminal background at the time he or she was hired. Courts have found such relationships in certain cases, particularly when the relationship between the individuals involves trust. *See, e.g., Moses v. Diocese of Colorado*, 863 P.2d 310, 328 (Colo. 1993) (finding that "the Diocese placed Father Robinson in a position that required not only frequent contact with others, but induced reliance and trust through the counseling process"); *Dolin v. Contemporary Fin. Solutions, Inc.*, 622 F.Supp.2d 1077, 1083 (D. Colo. 2009) (special relationship existed between financial investment employee and former account holders for whom the employee previously had fiduciary duty); *Prymal*, 2007 WL 4250020 at *13 ("I find a special relationship---in the form of a fiduciary duty---existed between Defendants and client-Plaintiffs."). However, based on the information in the Second Amended Complaint, the Court cannot conclude that such a special relationship existed here.

More importantly, the test devised by the Colorado Supreme Court in *Connes* does not focus on the existence of a so-called "special relationship." Instead, the test focuses on what the employer knew or should have known about the job applicant's character and conduct prior to hiring, <u>in the absence</u> of a criminal background check.

Only if the employer has a "reason to believe that a job applicant, [because of] some attribute of character or prior conduct, would constitute an undue risk of harm" must the employer conduct a background check. *Connes*, 831 P.2d at 1322. Plaintiff's Second Amended Complaint is devoid of any allegations whatsoever regarding Defendant GenX's knowledge of Rangel's "attribute[s] of character or prior conduct" that would trigger a duty to perform a criminal background check under Colorado law prior to hiring him.

As a result, the Court finds that Plaintiff has failed to sufficiently allege that Defendant GenX had a duty to conduct a criminal background check of Defendant Rangel at the time he was hired. Because Plaintiff's only allegation that Defendant GenX had a duty to Plaintiff which it breached is the claim that Defendant GenX failed to conduct a criminal background check of Defendant Rangel prior to hiring him, Plaintiff's negligent hiring claim fails as a matter of law. Accordingly, the Court **recommends** that the Motion [#12] be **granted** to the extent it seeks dismissal of Plaintiff's negligent hiring claim pursuant to Fed. R. Civ. P. 12(b)(6).

**B.  Negligent Retention**

Like negligent hiring, a negligent retention claim requires that Plaintiff plead the basic elements of negligence: duty, breach, causation, and damages. With regard to the duty element, "[a]n employer may be subject to liability for negligent supervision and retention[1] if the employer knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm." *Van Osdol*, 892 P.2d 402, 408 (Colo. App. 1994), *aff'd*, *Van Osdol II*, 908 P.2d 1122 (citations omitted); *see also*

---

[1]  Because the state court appears to treat "negligent supervision" and "negligent retention" as the same claim, the Court will rely on case law regarding both when considering Plaintiff's negligent retention claim.

13

*Medved v. DeAtley*, No. 12-cv-03034-PAB-MEH, 2013 WL 4873054, at *12 (D. Colo. Sept. 11, 2013); *Raleigh*, 130 P.3d at 1015; *Johnson*, 2007 WL 2461645, at *3 ("An employer will be found liable for negligent hiring and retention if, at the time of hiring, the employer had reason to believe that hiring the employee in question would create an undue risk of harm to others."). Thus, "to establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Makowski v. First Nat. of Nebraska, Inc.*, No. 12-cv-02280-CMA-MEH, 2013 WL 754922 at *9 (D. Colo. Feb. 6, 2013) (citing *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005)).

Defendant GenX argues that Plaintiff failed to adequately plead both that Defendant GenX breached a duty to Plaintiff and that such breach was the proximate cause of any harm suffered by Plaintiff. *Motion* [#12] at 7-9. Regarding Defendant GenX's retention of Defendant Rangel, Plaintiff alleges in her Second Amended Complaint:

- "Defendant Rangel was arrested on [the criminal charges] after he became employed by [Defendant GenX] and [Defendant GenX] knew, or should have known, or these criminal charges against Defendant Rangel," *Second Am. Compl.* [#27] at ¶ 23;

- "Given the nature of the criminal charges against Defendant Range[l], including charges of domestic violence, it was reasonably foreseeable that he might use violence against the female employees of the store," *id.* at ¶ 24; and

- "[G]iven Defendant Rangel's position as a store manager with the concomitant authority with regard to the management of store employees, including young women, and specifically the [P]laintiff, Defendant [GenX] had a duty to take reasonable steps to protect the female store employees by refusing to hire Rangel or, alternatively, by terminating his employment." *Id.* at ¶ 25.

The Court agrees with Defendant GenX that Plaintiff fails to plead sufficient facts supporting a plausible claim of negligent retention. Specifically, Plaintiff fails to allege facts supporting the idea that Defendant GenX's failure to terminate Rangel's employment was the proximate cause of the harm Plaintiff allegedly suffered. In addition, while Plaintiff alleges that Defendant Rangel was arrested "after he became employed by" Defendant GenX, *id.* at ¶ 23, Plaintiff fails to allege "knowledge or constructive knowledge about any unreasonable risk of harm caused by [Defendant Rangel] to the Plaintiff or to any other third party." *Makowski*, 2013 WL 754922, at *9. As a result, Plaintiff's negligent retention claim fails. Accordingly, the Court **recommends** that the Motion [#12] be **granted** to the extent it seeks dismissal of Plaintiff's negligent retention claim pursuant to Fed. R. Civ. P. 12(b)(6).

**C.   Dismissal With Prejudice**

Defendant GenX asks the Court to dismiss Plaintiff's negligent hiring/negligent retention claim with prejudice. *Reply* [#20] at 7-8. In support of this argument, Defendant GenX states that its counsel "engaged in extensive meet-and-confer discussions with Plaintiff's counsel" prior to filing the instant Motion to avoid "going through the time and expense of drafting" the instant Motion "and prevailing, only to have Plaintiff amend her Complaint to try and correct its deficiencies." *Id.* at 8. Defendant GenX maintains that its counsel "had two meet-and-confer conversations with Plaintiff's counsel over the telephone and exchanged email correspondence with him." *Id.*; see also *Herzog Email* [#20-1]. In the alternative, Defendant GenX argues that amendment would be futile because it "did not have a duty to conduct a criminal background check on Defendant Rangel as a matter of law" and the criminal charges

15

brought against Defendant Rangel did not "make it foreseeable that he would rape Plaintiff." *Id.*

The dismissal of an action "pursuant to Rule 12(b)(6), is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992). Here, Plaintiff who is represented by counsel, has amended her original Complaint [#1] twice. *See Am. Compl* [#10]; *Second Am. Compl.* [#27]. Further, defense counsel offers evidence that Plaintiff had notice that she did not adequately plead the elements of negligent hiring and negligent retention, and was specifically asked to file an amended complaint. *See Herzog Email* [#20-1] at 1. Finally, Plaintiff has failed to allege any facts, up to this point in the litigation, to support the notion that Defendant GenX had a duty to conduct a background check on Defendant Rangel or that her injury was foreseeable.

When a plaintiff is given several attempts to amend and those amendments "fail to cure the deficiencies in h[er] claims," dismissal with prejudice is appropriate. *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (finding that dismissal with prejudice was appropriate because even after amendment plaintiff "made no showing, beyond his conclusory allegations, that he could have stated viable causes of action against [defendants] if he had been granted yet another opportunity to amend his claims."); *see also Stinson ex rel. United States v. Maynard*, 341 F. App'x 413, 417 (10th Cir. Aug. 12, 2009) (unpublished table decision) (affirming dismissal with prejudice when pro se plaintiff had opportunity to amend and had notice that her amended complaint was deficient); *see also Tepper v. Van Dam*, 974 F.2d 1345, at *3-4 (10th Cir. 1992) (unpublished table decision) (relying on *Brierley v. Schoenfled*, 781 F.2d 838

(10th Cir. 1986), *Okusami*, and *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) to affirm dismissal of an action with prejudice).  As a result, the Court **recommends** that Plaintiff's fourth cause of action for negligent hiring/negligent retention be **dismissed with prejudice**.

### IV.  Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that the Motion [#12] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's fourth cause of action for negligent hiring and negligent retention be **DISMISSED with prejudice**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 8, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge